**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23582-BLOOM/Otazo-Reyes**

CARLOS ALBERTO MARTINEZ GARIN,

       Plaintiff,

v.

MARIO MENEGAZZO, and
CITY OF MIAMI,

       Defendants.

_____/

**ORDER ON MOTION TO DISMISS AMENDED COMPLAINT,**
**MOTION TO STRIKE DEFENDANT'S REPLY BRIEF, AND**
**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

    **THIS CAUSE** is before the Court upon Defendant Mario Menegazzo's ("Defendant" or "Menegazzo") Motion to Dismiss Amended Complaint, ECF No. [42] ("Motion to Dismiss"). Plaintiff Carlos Alberto Martinez Garin ("Plaintiff" or "Garin") filed a Response in Opposition, ECF No. [44] ("Response"), to which Defendant filed a Reply, ECF No. [47] ("Reply"). Also before the Court is Plaintiff's Objection and Motion to Strike Defendant's Reply Brief, ECF No. [48] ("Motion to Strike"). With respect to the Motion to Strike, Defendant filed a Response in Opposition, ECF No. [49], to which Plaintiff filed a Reply , ECF No. [53]. Lastly, before the Court is Plaintiff's Alternative Motion for Leave to File Second Amended Complaint, ECF No. [52] ("Motion to Amend"). With respect to the Motion to Amend, Defendant filed a Response in Opposition, ECF No. [55]. To date, Plaintiff has not filed a Reply to Defendant's Response to the Motion to Amend. The Court has carefully reviewed the Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss is denied, the Motion to Strike is denied, and the Motion to Amend is denied as moot.

## I.      BACKGROUND

On October 12, 2021, Plaintiff initiated this action against Defendants City of Miami and Menegazzo. *See* ECF No. [1] ("Initial Complaint"). On January 24, 2022, Plaintiff filed an Amended Complaint, asserting three counts against Menegazzo: false arrest under 42 U.S.C. § 1983 ("Count I"); state law false arrest ("Count II"); and violation of freedom of speech under 42 U.S.C. § 1983 ("Count III"). *See* ECF No. [41] ("Amended Complaint").

According to the Amended Complaint, on November 28, 2020, protesters gathered at "Versailles" on the southern side of the 3500 block of SW 8th Street in Miami, FL, to protest in support of the "San Isidro Movement," a group formed to oppose the U.S. government's censorship of artistic expression in Cuba. *See* ECF No. [41] ¶ 23. During the protest, the police escorted Edmundo Garcia, a supporter of the Cuban regime, after he attempted to agitate the protestors. *See id.* ¶ 26. Shortly after, Defendant arrested Alexander Otaola Casal ("Mr. Casal"), an actor, a social media influencer, and the organizer of the protest. *See id.* ¶ 27. Following those two incidents, Plaintiff arrived at the protest to film content for his YouTube channel and participate in the protest. *See id.* ¶ 28. Upon arrival, Plaintiff was informed that Mr. Casal had been arrested. *See id.* ¶ 29. Plaintiff subsequently recorded the protests and the officers who were present. *See id.* ¶¶ 90-92, 113. Plaintiff also "engaged in protected speech that was critical of the actions of the City of Miami Police." *Id.* ¶ 32. Defendant subsequently walked up to Plaintiff and arrested Plaintiff. *See id.* ¶ 37. Plaintiff did not resist arrest. *See id.* ¶ 38. Plaintiff was taken to the Miami Police South Station where he, along with Mr. Casal and several others arrested that day, were later released without an arrest record. *See id.* ¶ 45.

Plaintiff further alleges that "Chapter 36 of the City of Miami Code of Ordinance contains noise ordinances (the "Noise Ordinances") which are: a. not reasonable restrictions on the time,

place, or manner of protected speech, b. not narrowly tailored to serve a significant governmental interest, and c. do not leave open ample alternative channels for communication of the information." *Id.* ¶ 72. Plaintiff alleges that "[t]he aforementioned Noise Ordinances are also unconstitutionally vague because they: a. do not provide a person of ordinary intelligence fair notice with sufficient definiteness of what conduct is prohibited, and b. are so standardless that they authorize and encourage arbitrary and discriminatory enforcement." *Id.* ¶ 73.

On February 7, 2022, Defendant filed the instant Motion to Dismiss. *See* ECF No. [42]. Defendant argues that Plaintiff's claims should be dismissed with prejudice because: (1) probable cause existed for Plaintiff's arrest barring Counts I and II; (2) Defendant is entitled to qualified immunity on Count I; (3) sovereign immunity bars Count II; and (4) Plaintiff fails to state a claim for relief for Count III and Defendant is entitled to qualified immunity on Count III. *See generally id.* In addition, Defendant requests that this Court take judicial notice of the YouTube video ("Video") referenced in Plaintiff's Initial Complaint, which indicates that Defendant had probable cause to arrest Plaintiff for violating the aforementioned City of Miami Ordinances ("Noise Ordinances"). *See id.* at 4-5.

Plaintiff responds that the Court cannot take judicial notice of the Initial Complaint, including the Video referenced in the Initial Complaint. *See generally* ECF No. [44]. Because the Court cannot take judicial notice of the Initial Complaint and Video, Plaintiff argues that: (1) Counts I and II should not be dismissed because probable cause is not evident from the Amended Complaint; (2) Count I should not be dismissed because it is not evident that Defendant is entitled to qualified immunity; (3) Count II should not be dismissed because it is not evident that the claim is barred by sovereign immunity; and (4) Count III should not be

dismissed because Defendant relies on allegations outside the Amended Complaint and because the exception to the "no-probable-cause" requirement applies. *See id.*

Defendant replies that the Court can consider the Video because it is referenced in both the Initial Complaint and the Amended Complaint. *See* ECF No. [47]. Plaintiff subsequently filed his Motion to Strike, arguing that Defendant raises a new argument that the Court can consider the Video because it is referenced in the Amended Complaint, as opposed to arguing that the Court can consider the Video because it is referenced in the Initial Complaint. *See* ECF No. [48]. Defendant responds that the Motion to Strike is procedurally improper and that Defendant's argument in the Reply is a rebuttal to Plaintiff's Response, rather than a new argument. *See* ECF No. [49].

Lastly, on April 18, 2022, Plaintiff filed the Motion to Amend, requesting leave to amend the Amended Complaint if the Court was inclined to grant the Motion to Dismiss. *See* ECF No. [52]. Plaintiff argues that he discovered new information about Defendant's misconduct after the arrest in question. *See id.* at 3. Defendant responds that the deadline to amend pleadings was January 24, 2022, and that the Court should deny Plaintiff's request to amend the pleadings for a second time – four months after the deadline to amend pleadings – considering Plaintiff's undue delay in seeking leave to amend and the futility of any amendment to the Amended Complaint. *See* ECF No. [55].

## I.   LEGAL STANDARD

### A.  Failure to State a Claim

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B.  Probable Cause

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 99 S.Ct. 2689, 2692 (1979). "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)). Further, the Eleventh Circuit has held that probable cause constitutes an absolute bar to false arrest claims based on Florida law. *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect has committed or was committing a crime." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007); *see also Ortega*, 85 F.3d at 1525 ("Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." (citing *Marx*, 905 F.2d at 1505)). "An arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin*, 133 F.3d at 1435-36 (citing *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)). "An officer, however, need not take every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an

innocent person. Furthermore, once an officer makes an arrest based upon probable cause, he need not investigate independently every claim of innocence." *See id.* at 1436 (citations and internal quotation marks omitted). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Ortega*, 85 F.3d at 1525 (quoting *Marx*, 905 F.2d at 1506); *see also Rankin*, 133 F.3d at 1436 ("Probable cause is 'judged not with clinical detachment but with a common sense view to the realities of normal life.'" (quoting *Marx*, 905 F.2d at 1506)).

> But even in the absence of actual probable cause, the arresting officer will be entitled to qualified immunity if he shows at least "arguable probable cause to believe that a person is committing a particular public offense." [*Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998).] We ask whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest." *See id.* at 1382. An officer's "underlying intent or motivation" is irrelevant. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). . . . The existence of arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). But "[a]rguable probable cause does not require an arresting officer to prove every element of a crime." *Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001). . . . "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cty. Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). "Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures." *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1320 (11th Cir. 2016).

*Longino v. Henry Cty., Ga.*, 791 F. App'x 828, 832-33 (11th Cir. 2019).

### C.  Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of

this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *See id.* at 1233.

"Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

### D. Motion to Strike

Generally, Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (citation and internal quotation marks omitted); *see also Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 21, 2007) (same); *Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1187 (M.D. Fla. 2008) (same). Irrespective of the court's broad discretion, this ability to strike is considered to be drastic, and is often disfavored. *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D.

Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)); *Fabing v. Lakeland Regional Medical Center, Inc.*, 2013 WL 593842, at *2 n.2 (M.D. Fla. 2013) (calling Rule 12(f) a "draconian sanction").

Further, "Rule 12(f) cannot serve as the procedural vehicle for striking language contained in motion papers." *Santana v. RCSH Operations, LLC*, No. 10-61376-CIV, 2011 WL 690174, at *1 (S.D. Fla. Feb. 18, 2011) (quoting *Holyoak v. United States*, No. CV 08-8168-PHX-MHM, 2009 WL 1456742, at *1 (D. Ariz. May 21, 2009)).

### E.  Motion for Leave to Amend

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, "[a] district court need not . . . allow an amendment where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing the amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) ("This policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus, '[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'") (citation omitted).

In addition, under the Federal Rules of Civil Procedure, district courts are required to enter a scheduling order that limits the time to amend the pleadings. *See* Fed. R. Civ. P. 16(b)(3). Scheduling orders may be modified only "for good cause and with the judge's consent." *See id.* at Rule 16(b). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note) (internal quotation marks omitted). Accordingly, when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused. *Id.* at 1418 n.2; *see also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [we] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Therefore, when a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis. *Id.* at 1419. First, the movant must demonstrate good cause under Rule 16(b) of the Federal Rules of Civil Procedure. Good cause exists when the deadline could not "be met despite the diligence of the party seeking the extension." *Id.* at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period, (2) whether the information supporting the proposed amendment was available to the movant, and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See id.* at 1419.

If the movant demonstrates good cause, the court proceeds to determine whether an amendment to the pleadings is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *See id.*

## II.   DISCUSSION

### A.  Motion to Strike

Addressing the Motion to Dismiss requires the Court to consider Defendant's Reply, which argues that the Court should consider the Video referenced in the Amended Complaint. In the Motion to Strike, Plaintiff requests that the Court strike from the Reply all references to the Video and all arguments for incorporation by reference of the Video referenced in the Amended Complaint. As such, the Court addresses the Motion to Strike before addressing the Motion to Dismiss.

In the Motion to Strike, Plaintiff contends that Defendant raises, for the first time in the Reply, that the Court should take judicial notice of the Video "incorporated by reference in the current [Amended Complaint]," as opposed to arguing that the Court should take judicial notice of the Initial Complaint and the Video referenced therein as Defendant had argued in the Motion to Dismiss. ECF No. [48] at 2. As such, Plaintiff requests that the Court strike Defendant's arguments to consider the Video referenced in the Amended Complaint. *See id.* at 4.[1]

Defendant responds that Plaintiff fails to set forth the procedural vehicle through which Plaintiff seeks to strike arguments in Defendant's Reply. *See* ECF No. [49]. Defendant notes that although the Motion to Strike is styled as an "objection" and a "motion to strike," the only procedural basis for Plaintiff's Motion to Strike appears to be Rule 12(f). However, courts have repeatedly held that Rule 12(f) only permits the striking of pleadings and that a reply brief is not a pleading. *See id.* at 2-3 (citing *Pyzynski v. Thomas & Betts Corp.*, 2017 WL 9510591, at *1 (M.D.

---

[1] Plaintiff's Response to the Motion to Dismiss further argues that the Court cannot incorporate by reference the Initial Complaint or the Video referenced therein. *See* ECF No. [44] at 6-7.

Fla. 2017) (explaining that "a motion to strike is not the proper vehicle for challenging matters not contained in pleadings," which is why "motions to strike other filings (such as other motions, responses, or exhibits) are routinely denied as improper"); *Santana v. RCSH Operations, LLC*, No. 10-61376-CIV, 2011 WL 690174, at *1 (S.D. Fla. 2011) (noting that "Rule 12(f) cannot serve as the procedural vehicle for striking language in motion papers") (internal citations omitted)). Further, Defendant contends that the Reply does not introduce new arguments but merely rebuts Plaintiff's Response. *See id.* at 3-4. According to Defendant, Plaintiff's Response argues that the Court should not take judicial notice of the Video because Defendant's Motion to Dismiss avers that the Video was referenced in the Initial Complaint, and Defendant's Reply merely clarifies that the Video is also referenced in the Amended Complaint. *See id.* Plaintiff does not meaningfully reply to Defendant's argument regarding the lack of a procedural vehicle for Plaintiff's requested relief but maintains that Defendant raises a new argument in the Reply. *See* ECF No. [53].

The Court agrees with Defendant. First, Plaintiff fails to set forth a procedural vehicle to strike Defendant's Reply. To the extent that the Motion to Strike could be construed as a motion to strike pursuant to Rule 12(f), the Court reiterates that "Rule 12(f) cannot serve as the procedural vehicle for striking language contained in motion papers." *Santana*, 2011 WL 690174, at *1. On this ground alone, Plaintiff's Motion to Strike is unavailing. Second, the Court is not persuaded that Defendant's Reply raises a new argument. Defendant's Reply only contains rebuttals to Plaintiff's Response. As Defendant correctly notes, "Local Rule 7.1(c)(1) carves out a limited exception to the general no new-arguments/evidence-rule and permits a movant to 'serve a reply memorandum with affidavits, declarations, or other materials, provided that all such materials are strictly limited to rebuttal of matters raised in the opposing memorandum.'" *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14-20140-CIV, 2014 WL 3845449, at *2 (S.D. Fla. Aug. 5, 2014) (citation

omitted). While Plaintiff attempts to draw a distinction between Defendant's request to incorporate by reference the Video in the Initial Complaint as opposed to the Video referenced in the Amended Complaint, the Video in question is one and the same, and Defendant is requesting that the Court consider the Video. By noting that the Video is also referenced in the Amended Complaint, Defendant is simply clarifying his original request that the Court consider the Video and thereby properly rebutting Plaintiff's Response. Third, Defendant's Motion to Dismiss expressly cites to the Video *in the Amended Complaint* when requesting that the Court incorporate the Video by reference, effectively preserving his argument that the Amended Complaint also references the Video. *See* ECF No. [42] at 2 n.1; *see also id.* at 5 n.3.

Even if Defendant had argued, for the first time in his Reply, that the Video was referenced in the Amended Complaint, and the Court is bound to disregard that argument because it was raised for the first time in the Reply, this Court could still *sua sponte* consider the Video referenced in the Amended Complaint if the requirements of incorporation by reference are met. *See Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020), *cert. denied*, 141 S.Ct. 2700 (2021) ("A document or thing is incorporated by reference into a complaint where (1) it is central to the plaintiff's claim, (2) its contents were alleged in the complaint, and (3) no party questions those contents."). In other words, the Court is unaware of, and Plaintiff fails to cite, any case law establishing that the Court cannot *sua sponte* incorporate by reference a document or video that is central to Plaintiff's claims, referenced in the Amended Complaint, and undisputed in terms of authenticity.

The Court further notes that the Eleventh Circuit has expressly held that district courts can consider documents that were filed with an original complaint in deciding a motion to dismiss an amended complaint in a civil rights action. *See Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009). The Eleventh Circuit specifically held that a "district court ruling on a motion to dismiss is

Case 1:21-cv-23582-BB Document 60 Entered on FLSD Docket 05/25/2022 Page 14 of 26

not required to disregard documents that the plaintiff himself filed with his original complaint." *See id.* at 534. As such, even if the Court could not consider the Video referenced in the Amended Complaint, the Court could consider the same Video referenced in the Initial Complaint.

As such, Plaintiff's Motion to Strike is denied.

### B. Motion to Dismiss

#### i. Count I[2]

In Count I, Plaintiff asserts a § 1983 false arrest claim, alleging that Defendant unlawfully seized Plaintiff in violation of Plaintiff's Fourth Amendment rights. *See* ECF No. [41] ¶¶ 77-82. Defendant argues that Count I must be dismissed because (1) probable cause existed for Plaintiff's arrest, thus barring any federal false arrest claim; and (2) Defendant is entitled to qualified immunity. *See* ECF No. [42] at 5-10. In support, Defendant first requests that the Court take judicial notice of the Video under the incorporation by reference doctrine. *See id.* at 5 n.3 (citing *Blake v. Batmasian*, No. 15-81222-CIV, 2017 WL 11633014, at *1-2 (S.D. Fla. 2017); *Rosenberg v. Labarga*, No. 17-21699-CV, 2017 WL 7803860, at *1 (S.D. Fla. 2017)). Defendant maintains that the Video is central to Plaintiff's claim; (2) its contents were alleged in the Initial Complaint; and (3) neither party questions the authenticity of its contents. *See id.* at 4. Next, Defendant contends that the Video demonstrates that at the time of the arrest, Plaintiff was yelling into a megaphone to amplify his voice in violation of the Noise Ordinances. *See id.* at 6-7. Defendant specifically relies on three separate Ordinance Chapters.

City of Miami Ordinance Chapter 36-1 states:

It shall be unlawful to make any loud, unnecessary, excessive or unusual noise in the city.

---

[2] The parties' briefings do not proceed Count by Count and instead raise interrelated arguments that apply to some Counts and not others. For clarity, the Court proceeds by addressing each Count and the arguments applicable to each Count before proceeding to the following Count.

Miami, Florida, Code of Ordinances Ch. 36-1 (2021).

>   City of Miami Ordinance Chapter 36-3 states,

>   No person shall create any loud or boisterous noise which may annoy persons on any street or sidewalk or in any building adjacent thereto.

Miami, Florida, Code of Ordinances Ch. 36-3 (2021).

>   City of Miami Ordinance Chapter 36-4 states, in relevant part:

>   (a) It shall be unlawful for any person owning, occupying or having charge of any building or premises or any part thereof, in the city, at any time to cause or suffer or allow any loud, unnecessary, excessive or unusual noises in the operation of any radio, phonograph or other mechanical sound-making device or instrument, or reproducing device or instrument, or in the playing of any band, orchestra, musician or group of musicians, or in the use of any device to amplify the music of any band, orchestra, musician or group of musicians, where the noise or music is plainly audible at a distance of 100 feet from the building, structure, vehicle or premises in which or from which it is produced. The fact that the noise or music is plainly audible at a distance of 100 feet from the vehicle or premises from which it originates constitutes prima facie evidence of a violation of this chapter.

Miami, Florida, Code of Ordinances Ch. 36-4(a) (2021).

Defendant avers that there was probable cause that Plaintiff violated the Noise Ordinances, and the existence of probable cause bars any claim for false arrest. *See* ECF No. [42] at 5-8. Defendant further argues that there was arguable probable cause that Plaintiff violated the Noise Ordinances, and Defendant is entitled to qualified immunity. *See id.* at 8-10.

Plaintiff responds that the cases Defendant relies upon in support of Defendant's request that the Court consider the Video is "an end run around the clearly established case law limiting a Court to the four corners of the operative complaint in deciding a motion to dismiss . . . ." ECF No. [44] at 6. Plaintiff argues that the Court cannot incorporate by reference a Video that was referenced in the Initial Complaint because the Initial Complaint was superseded by the Amended Complaint. *See id.* at 6-7. Without the Video, Plaintiff maintains that Count I should not be dismissed because the existence of probable cause is not evident from the Amended Complaint.

*See id.* at 7. Plaintiff also argues that Defendant is not entitled to qualified immunity based on the allegations in the Amended Complaint. *See id.* at 7-8.

As noted above, Defendant replies that the Video is also referenced in the Amended Complaint and maintains that the Court can consider the Video because it is incorporated by reference to the Amended Complaint. *See* ECF No. [47].

The Court agrees with Defendant to the extent that the Court can consider the Video. First, having already determined that the Court can incorporate the Video referenced in the *Amended Complaint* if the requirements of incorporation by reference are met, the Court need not address Plaintiff's argument that the Court cannot incorporate by reference the Video cited in the *Initial Complaint*. As such, the Court proceeds to determine whether the Video satisfies the three-prong analysis under the incorporation by reference doctrine.[3]

As Defendant correctly notes, under the incorporation by reference doctrine, "[a] document or thing is incorporated by reference into a complaint where (1) it is central to the plaintiff's claim, (2) its contents were alleged in the complaint, and (3) no party questions those contents." *Quinette*, 805 F. App'x at 700. In this case, the Video is central to Plaintiff's violation of freedom of speech claims against both Defendants. *See* ECF No. [41] ¶¶ 90-92, 95, 111-13, 115. The Video was referenced in the Amended Complaint. *See id.* ¶¶ 90-92, 95, 111-13, 115. Finally, the contents of the Video are undisputed. Plaintiff notably does not dispute any of the three factors. As such, all three factors are met, the Video is incorporated by reference to the Amended Complaint, and the Court will consider the Video in addressing the Motion to Dismiss.

---

[3] The Court reiterates it can also incorporate by reference the Video cited in the Initial Complaint if it chooses to do so. *See Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) (holding that a "district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint.").

Next, Defendant argues that the Video shows that Defendant had sufficient grounds for probable cause to arrest Plaintiff for violating the Noise Ordinances, thus barring any claim for false arrest. *See* ECF No. [42] at 5-8. Defendant further argues that, even if Defendant was mistaken at the time of the arrest and there was no probable cause, there was arguable probable cause. *See id.* at 9. Law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity. *See id.* (citing *Hunter v. Bryant*, 112 S. Ct. 534, 536 (1991); *Redd v. City of Enter.*, 140 F.3d 1378 (11th Cir. 1998)).

In the Response, Plaintiff does not meaningfully address Defendant's contention that the Video shows that Defendant had probable cause or arguable probable cause. *See generally* ECF No. [44]. However, the Amended Complaint alleges that the Noise Ordinances are "unconstitutionally vague." ECF No. [41] ¶ 73. The Amended Complaint specifically claims that the Noise Ordinances are facially unconstitutional because they (a) are not reasonable restrictions on the time, place, or manner of protected speech; (b) are not narrowly tailored to serve a significant governmental interest; and (c) do not leave open ample alternative channels for communication of information. *See id.* ¶ 72, *see also Clark v. Community for Creative Non-Violence,* 104 S.Ct. 3065, 3068-69 (1984) (outlining the three factors required to raise a First Amendment challenge to a statute). Because the Amended Complaint challenges the constitutionality of the Noise Ordinances, the Court must first address whether Defendant could have relied upon the Noise Ordinances to find probable cause or arguable probable cause before addressing whether the Video shows probable cause or arguable probable cause.

The Court begins by noting that it is well-established that an arrest based on a presumptively valid law precludes a claim for false arrest. *See Pierson v. Ray,* 87 S.Ct. 1213

(1967). However, the Supreme Court in *Michigan v. DeFillippo,* 99 S.Ct. 2627, 2632 (1979), created a narrow exception for laws that are "grossly and flagrantly unconstitutional."

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—*with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.*

*Id.* (emphasis added).

In this case, the Amended Complaint effectively alleges that Defendant could not have relied on the Noise Ordinances for probable cause because the Noise Ordinances are grossly and flagrantly unconstitutional. *See Sanchez v. City of S. Miami*, No. 12-24227-CIV, 2013 WL 1729373, at *5 (S.D. Fla. Apr. 22, 2013) (noting that allegations regarding the arresting officers' seemingly arbitrary enforcement of a noise ordinance could be construed as an allegation that the noise ordinance was grossly and flagrantly unconstitutional to survive a motion to dismiss). Given Plaintiff's allegations that the Noise Ordinances are grossly and flagrantly unconstitutional, the Amended Complaint sufficiently alleges that there was no probable cause that Plaintiff violated any presumptively valid law. Without any probable cause, Defendant's first argument that Plaintiff's federal false arrest claim is barred by probable cause fails.

Defendant's second argument that there was arguable probable cause and that Defendant is entitled to qualified immunity similarly fails. As noted above, by challenging the facial constitutionality of the Noise Ordinances, Plaintiff effectively alleges that there was no arguable probable cause that Plaintiff violated any presumptively valid law. To the extent that Defendant relies on *Hunter*, 112 S. Ct. at 536, for the contention that law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity, the Court is not persuaded. By challenging the constitutionality of the Noise Ordinances

as grossly and flagrantly unconstitutional, Plaintiff effectively alleges that Defendant could not have "reasonably" concluded that probable cause was present based on the Noise Ordinances. Defendant is entitled to qualified immunity only for "reasonabl[e]" mistakes. *Hunter*, 112 S. Ct. at 536.

Defendant's reliance on *Redd v. City of Enter.*, 140 F.3d 1378 (11th Cir. 1998), is also unavailing. In *Redd*, the Eleventh Circuit held that the plaintiffs' federal false arrest claim was supported by probable cause and that the defendant officers were entitled to qualified immunity. *See* 140 F.3d at 1383. However, the plaintiffs in *Redd* did not challenge the constitutionality of the disorderly conduct statute in question. *See id.* In fact, the court in *Redd* stated that "plaintiffs do not attack the disorderly conduct statute as unconstitutional, and we note that the Alabama disorderly conduct statute has recently been held constitutional by the Alabama courts." *Id.* In this case, Plaintiff does challenge the constitutionality of the Noise Ordinances. Therefore, *Redd* is inapplicable. Given Plaintiff's allegations that there was no presumptively valid law that provides the basis for any arguable probable cause, Defendant's argument that he made a reasonable mistake in relying on what are alleged to be presumptively invalid laws is unavailing.[4]

As such, the Court need not reach the issue of whether the Video shows probable cause or arguable probable cause, and dismissal of Count I is not warranted.

---

[4] The Court notes that there are relevant issues that Defendant could have raised in his Motion to Dismiss in response to Plaintiff's constitutional challenge, such as whether there are exceptions to the Noise Ordinances or corollary ordinances allowing protestors to apply for a special events permit that would make the restriction on protected speech more reasonable and leave open alternative channels for communication. Because Defendant does not squarely address Plaintiff's constitutional challenge, at this stage, the Court concludes that the Noise Ordinances are alleged to be flagrantly and grossly unconstitutional such that Defendant could have not relied upon them. Defendant may, of course, argue at a later stage of the proceedings that the Noise Ordinances are not grossly and flagrantly unconstitutional as a matter of law. The Court further notes that it is unclear whether the protestors applied for a special events permit for the protest, if there are in fact such measures in place. If the protestors applied for and were approved a special events permit, then there may not have been probable cause or arguable probable cause that Plaintiff violated the Noise Ordinances.

Case No. 21-cv-23582-BLOOM/Otazo-Reyes

### ii.   Count II

In Count II, Plaintiff asserts a state law false arrest claim, alleging that Defendant illegally confined him, Defendant acted in bad faith and with malicious purpose, and Defendant's actions were unreasonable and unwarranted under the circumstances. *See* ECF No. [41] ¶¶ 83-88. Defendant argues that Count II must be dismissed because (1) probable cause existed for Plaintiff's arrest, thus barring any state false arrest claim; and (2) Plaintiff's state law claim is barred by sovereign immunity. *See* ECF No. [42] at 5-8, 10. Plaintiff again responds that Count II should not be dismissed because the existence of probable cause is not evident from the Amended Complaint since the Court cannot rely on the Video. *See* ECF No. [44] at 7. Plaintiff also argues that Count II should not be dismissed because it is not evident from the Amended Complaint that the claim is barred by sovereign immunity. *See id.* at 9-10.

For the same reasons stated, the Court considers the Video but is not persuaded by Defendant's probable cause argument. To reiterate, Plaintiff effectively alleges that the Noise Ordinances are grossly and flagrantly unconstitutional and cannot form the basis for any probable cause to arrest Plaintiff. Without any probable cause that Plaintiff violated a presumptively valid law, Defendant's first argument that Plaintiff's state law false arrest claim is barred by probable cause fails.

Next, with respect to Defendant's sovereign immunity argument, the Court is again not persuaded. Florida Statute § 768.28(9)(a) provides immunity for officers, unless it is shown that the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Defendant argues that there are only conclusory allegations in the Amended Complaint that Defendant acted in bad faith or with malicious purpose. However, as noted above, Defendant is alleged to have arrested Plaintiff

20

without probable cause or arguable probable cause that Plaintiff violated any presumptively valid laws. Further, Plaintiff alleges that Defendant arrested him after he criticized the City of Miami Police. Taking the factual allegations in the Amended Complaint as true, the arrest of an individual without probable cause or arguable probable cause, after that individual criticized the entity effectuating the arrest, is an arrest that took place in bad faith or with malicious purpose. In other words, the Court considers the allegations in the Amended Complaint to be sufficient in claiming that Defendant acted in bad faith or with malicious purpose, and as a result, the Court is not persuaded by Defendant's sovereign immunity argument.[5]

Defendant's arguments are unavailing, and dismissal of Count II is not warranted.

### iii.    Count III

In Count III, Plaintiff asserts a § 1983 violation of freedom of speech claim, alleging that Defendant violated Plaintiff's First Amendment right. *See* ECF No. [41] ¶¶ 89-98. More specifically, Plaintiff asserts a retaliatory arrest claim based on speech protected by the First Amendment. *See id.* Defendant argues that Count III must be dismissed because it fails to state a cause of action. *See* ECF No. [42] at 10-12. Defendant contends that the Complaint is devoid of an articulated retaliatory motive between Plaintiff's protected speech and the arrest. *See id.* at 10-11. Defendant also argues that Defendant is entitled to qualified immunity for Count III. *See id.* at 12. Defendant relies on *Nieves v. Bartless*, 139 S.Ct. 1715, 1726 (2019), where the Supreme Court held that "[t]he presence of probable cause should generally defeat a First Amendment retaliatory

---

[5] Defendant relies on *Bloom v. Alvereze*, 498 F. App'x 867, 881 (11th Cir. 2012), to argue that the Complaint must raise specific allegations as opposed to conclusory allegations. However, in *Bloom*, the complaint did not list a particular defendant "as a participant in the background paragraphs explaining the alleged conspiracy" and only contained immaterial or conclusory allegations that did not warrant credence from the court. *Id.* As noted above, the Complaint in this case contains specific allegations naming Defendant as the individual who arrested Plaintiff without probable cause. As such, Defendant's reliance on *Bloom* is unpersuasive.

arrest claim." This requirement for plaintiffs to show the absence of probable cause is referred to as the "no-probable-cause" requirement. Defendant again maintains that probable cause existed in this case because Plaintiff was utilizing a megaphone and amplifying his voice in violation of the Noise Ordinances, and as a result, Defendant is entitled to qualified immunity. *See* ECF No. [42] at 12.

Plaintiff responds that Count III should not be dismissed because Defendant relies on allegations outside the operative complaint, namely the Video, to negate allegations in the Complaint that satisfactorily allege the elements of a retaliatory arrest claim. *See* ECF No. [44] at 10-12. Plaintiff also argues that the exception to the "no-probable-cause" requirement applies. *See id.* Plaintiff further submits that the retaliatory nature of the arrest can be inferred from Plaintiff's allegation that Defendant did not arrest those within his field of view who "engaged in speech that was not of the same sort as Mr. Garin's and did so at the same volume as Mr. Garin or at a substantially higher volume." *See id.* at 12 (quoting ECF No. [41] ¶ 33).

The Court first notes that Plaintiff's argument with regard to the exception to the "no-probable-cause" requirement misses the mark. As stated above, the Supreme Court held in *Nieves* that "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim," 139 S.Ct. at 1726, but the Supreme Court further held that "a narrow [exception] is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *See id.* at 1727. When officers do not typically exercise their discretion to make arrests when there is probable cause to make arrests but arrest a particular individual, then the "no-probable-cause" requirement does not apply and that particular individual does have a legitimate retaliatory arrest claim, even if there was probable cause for his arrest, because other similarly situated individuals were not arrested. For instance, the Supreme Court

noted that jaywalking could be a crime for which the "no-probable-cause" requirement does not apply under the narrow exception.

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

*Id.* at 1727.

In this case, however, the narrow exception is not relevant because the Amended Complaint alleges that there was no probable cause to arrest Plaintiff for violating any laws – that is, any laws that are not grossly and fragrantly unconstitutional. Because Plaintiff alleges that there was no probable cause, the Court need not consider the narrow exception to the "no-probable-cause" requirement, which would be relevant only if the "no-probable-cause" requirement was not met. Further, as noted above, because the Amended Complaint alleges there was no probable cause, Defendant's argument with respect to qualified immunity fails. In sum, although Plaintiff unnecessarily expounds on the exception to the "no-probable cause" requirement, Defendant's argument with respect to qualified immunity is ultimately unavailing given Plaintiff's allegations regarding the absence of probable cause.

The Court is also not persuaded by Defendant's argument that the Amended Complaint fails to state a cause of action for Count III because the Complaint is devoid of an articulated retaliatory motive between Plaintiff's protected speech and the arrest. The Eleventh Circuit has stated that to allege a § 1983 First Amendment retaliation claim, the plaintiff must allege that (1) that the plaintiff engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech. *See* ECF No. [42] at 10 (citing *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019)). To establish

the final requirement of a causal connection, "the plaintiff must allege that the protected conduct was the motivating factor behind the defendants' actions." *Abella v. Simon*, 482 F. App'x. 522, 523 (11th Cir. 2012) (citation and internal quotation marks omitted).

In this case, the Court first reiterates that the Amended Complaint alleges that Plaintiff "engaged in protected speech that was critical of the actions of the City of Miami Police." ECF No. [41] ¶ 32. Next, the Court can reasonably infer that Defendant's conduct in arresting Plaintiff adversely affected Plaintiff's ability to further engage in protected speech since Plaintiff was taken from the protest to the Miami Police South Station. *See id.* ¶ 45. Finally, the Amended Complaint alleges a retaliatory motive by claiming that although Plaintiff was arrested for criticizing the City of Miami Police, other protestors who engaged in speech that was not of the same sort but at the same or at a substantially higher volume were not arrested, indicating that Plaintiff was singled out for arrest because of his vocal criticism of the City of Miami Police. *See id.* ¶ 33. In addition, the Amended Complaint specifically alleges that the "timing of Mr. Garin's arrest, and his selection out of the many others in the crowd, evidence that Officer Menegazzo arrested Mr. Garin in retaliation for the content of his speech." ECF No. [41] ¶ 40.[6] Thus, the allegations do articulate a retaliatory motive between Plaintiff's protected speech and Defendant's conduct. In sum, the Amended Complaint states a claim for relief for Count III.[7]

---

[6] Defendant argues that other protestors were similarly criticizing the City of Miami Police and were not arrested, suggesting that Plaintiff's arrest was not a retaliatory action in response to the content of Plaintiff's speech. *See* ECF No. [47] at 7. However, the Video shows that Plaintiff was the only one speaking into a megaphone while criticizing the City of Miami Police, indicating that he was the only criticizing the City of Miami Police at a high decibel and that his arrest was a retaliatory action in light of the unique volume of Plaintiff's criticism of the City of Miami Police.

[7] To the extent that Defendant relies on *Lawson v. City of Miami Beach,* 908 F. Supp. 2d 1285 (S.D. Fla. 2012), the Court is not persuaded. In *Lawson*, the plaintiff argued unavailingly that the court could infer a retaliatory motive from the defendant's statement in response to the plaintiff's pre-arrest remark that he knew President Obama. *See id.* at 1292. The defendant was alleged to have stated that President Obama could not help the plaintiff as the defendant was arresting the plaintiff. *See id.* at 1287. The court determined that it could not infer a retaliatory motive from the defendant's statement regarding President Obama alone. *See id.* at 1292. In contrast, the allegations in this case are not similar. Here, Plaintiff alleges that Plaintiff

As such, Defendant's arguments are not persuasive, and dismissal of Count III is not warranted.

### C.  Motion to Amend

As a final matter, Plaintiff filed the Motion to Amend, requesting leave to amend the Amended Complaint if Defendant's Motion to Dismiss is granted. *See* ECF No. [52].[8] Because the Court denies Defendant's Motion to Dismiss, Plaintiff's Motion to Amend is denied as moot.[9]

## III.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [42]**, is **DENIED**.

2. Defendant shall answer Plaintiff's Amended Complaint, **ECF No. [41]**, by no later than **June 3, 2022**.

3. Plaintiff's Motion to Strike, **ECF No. [48]**, is **DENIED**.

4. Plaintiff's Motion for Leave, **ECF No. [52]**, is **DENIED AS MOOT**.

---

was the only one who was arrested for criticizing the City of Miami Police while others were not arrested because they were not criticizing the City of Miami Police. As noted above, the Court can infer a retaliatory motive from the decision to selectively arrest Plaintiff after his vocal criticism of the City of Miami Police.
[8] Plaintiff also argues in his Reply that if the Court dismisses any Counts against Defendant, then Plaintiff should be permitted an opportunity to amend his Amended Complaint. *See* ECF No. [44] at 12-13.
[9] To the extent that the Second Amended Complaint would attempt to remove all references to the Video, *see* ECF No. [52] at 8-27, the Court notes that such an attempt would not result in this Court being precluded from considering Plaintiff's Initial Complaint, Amended Complaint, and the Video referenced therein, especially because the allegations in the Second Amended Complaint would be inconsistent with those contained in the Amended Complaint. *See Fernandez v. School Board of Miami-Dade County*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (explaining that the court can accept the facts as alleged in the plaintiff's original complaint as true for the purposes of a motion to dismiss where the plaintiff made a "transparent attempt . . . to amend his pleading[s] in order to avoid a dispositive defense"); *Smith v. Brevard County*, 461 F. Supp. 2d 1243, 1248 (M.D. Fla. 2006) ("It is true that the Court is permitted to take judicial notice of the allegations made in Plaintiff's earlier Complaint, and need not accept internally inconsistent factual allegations.").

Case No. 21-cv-23582-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 24, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

26